## H. V. LOVING, ET AL., *v.* WARREN COUNTY.

[Abstract Kentucky Law Reporter, Vol. 1—340.]

**Evidence of Signature.**

　　Where a non-expert witness states that a signature purporting to be his is not his, and that he knew his own signature from that written by others, it is improper and inadmissible in testing his knowledge on cross-examination to produce papers with a large number of signatures pasted on them purporting to be his signature, and ask him to tell the jury which of these signatures were genuine and which were not.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

October 8, 1880.

OPINION BY JUDGE PRYOR:

The real issue in this case is as to the signature of Thomas, the county judge, to the bonds in controversy; and while the testimony of Thomas had, no doubt, a controlling influence with the jury, and although he may have been mistaken as to his own handwriting, the mode proposed by counsel to invalidate his statement, or rather to destroy the effect of his testimony, was properly rejected by the court. While the witness answered that he knew his signature from that of Clark or anyone else, he did not pretend to be an expert, and was not willing to say that in all cases he could distinguish his genuine signature from the imitation or forgery. After his statement that the signature to the bonds purporting to be his was not genuine, counsel, with a view of testing his capacity for judging the genuineness of his own signature, produced papers with nineteen signatures pasted on them purporting to be the signature of the witness, and asked him to tell the jury which of the signatures were genuine and which were not. This paper, with nineteen detached signatures, would have made as many as nineteen immaterial issues, and such an examination of the witness would have resulted, no doubt, in his failure to sustain himself as an expert before the jury; nor would it establish the fact that the witness had signed the bonds, when upon an examination of the entire writing to which the signature was attached he was able to say that he never signed it. Very few persons, other than experts, observe their own signatures or handwriting so closely as not to be deceived by that which is a mere imitation of the original, and written for the very purpose of misleading.

It would be unjust to the witness, as well as the formation of new issues that would lead to an interminable trial, to permit him to be examined in such a mode. There is no reply more natural than for the witness to say, when examined as to his own handwriting, that he would know it from the handwriting of others; and still such a response does not make him an expert as to his own handwriting. Yet it would be an unfair test to submit to him a a number of isolated signatures purporting to be his, and require him to recognize the genuine from the forgery. I Wharton's Law on Evidence (2nd ed.), Sec. 710; *North American Fire Ins. Co. v. Throop,* 22 Mich. 146; *McAllister v. McAllister,* 7 B. Mon. 269.

The appellants could not have been prejudiced by the statement of Gardner in regard to Clark, or the statement of Galt as to his having seen the bond on the trial of Clark. The entire defense made by the county was on the theory that the bonds had been signed by Clark, and not by Thomas. The latter stated that in his opinion the signature was in the handwriting of Clark, and the jury, by the very nature of the defense made, knew that Clark was charged with the forgery. The reference, therefore, to Clark by these witnesses could not have influenced the jury in finding for the appellee.

Nor do we perceive any error in the court's refusing to permit Allison to testify as an expert. The court heard the statement of the witness, and adjudged that he was not competent; besides, a number of experts had been examined and the weight of the testimony, so far as they testified, may have been on the side of the appellant. At least the exclusion of this testimony, if competent, could not have prejudiced the case, as many experts had already testified to the same facts about which this witness was called to speak. Other errors have been assigned that we regard as immaterial, one or two witnesses on each side, after being examined, were called back and re-examined, and their statements were not material either way.

We have not given the instructions in this case a careful consideration, for the reason that the interrogatories upon which the special findings are based presented the entire case of the plaintiff in every phase, and must be regarded as conclusive of this case. The jury was required to answer and say whether the signature to the papers was that of Thomas, and they responded in the negative. They were required to answer and say whether the bonds, or any

of them sued on, were delivered to the treasurer of the sinking fund of Warren county, or sold by the county judge, or by any person appointed by him, and the response was again in the negative. They were then required to state whether either of these officers had received any of the proceeds of the sales of the bonds in dispute, and there was a negative response. They were again asked if any of the bonds in controversy were signed by the county judge, and the response was in the negative.

It was deemed important to ascertain whether any of the officers of the county authorized to receive the bonds, when issued, had at any time in their possession the bonds held by the appellants, and if not, whether they had received the proceeds of the sale of the bonds. All these special findings were favorable to the appellee, as well as the general verdict.

The only issue really was,—Did Thomas, the county judge, sign the bonds? The county never received any of the money for which they were sold, and the finding by the jury that the signature to the bonds was not in the handwriting of Thomas must determine this controversy.

Judgment *affirmed.*

Judge Hines not sitting.

*W. O. & J. L. Dodd, Simrall & Bodley, for appellants.*

*Bigger & Davie, for appellee.*

[See *Loving v. Warren County,* 14 Bush (Ky.) 316, cited in *Branson v. Commonwealth,* 92 Ky. 330, 13 Ky. L. 614, 17 S. W. 1019; *Buckles v. Commonwealth,* 113 Ky. 795, 24 Ky. L. 571, 68 S. W. 1084; *Louisville Southern R. Co. v. Hooe,* 18 Ky. L. 521, 35 S. W. 266, 38 S. W. 131; *Kistler v. Slaughter,* 20 Ky. L. 1937, 50 S. W. 529; *Spencer v. Society of Shakers,* 23 Ky. L. 854, 64 S. W. 468.]